# Exhibit 1

# Exhibit 1

AO 89B  (07/16)  Subpoena to Produce Documents, Information, or Objects in a Criminal Case

# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| United States of America ) | |
| v. ) | |
| NINE2FIVE, LLC and SEBASTIAN GUTHERY ) | Case No.  3:23-CR-00179-TWR |
| ) | |
| *Defendant* ) | |

**SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS IN A CRIMINAL CASE**

To:  Food and Drug Adminstration, 10903 New Hampshire Ave., Silver Spring, MD 20993

*(Name of person to whom this subpoena is directed)*

**YOU ARE COMMANDED** to produce at the time, date, and place set forth below the following books, papers, documents, data, or other objects:

See Attachment A

| Place: Edward J. Schwartz United States Courthouse<br>221 West Broadway, Courtroom 3A<br>San Diego, CA 92101 | Date and Time: 01/04/2024 10:00 am |
|---|---|

Certain provisions of Fed. R. Crim. P. 17 are attached, including Rule 17(c)(2), relating to your ability to file a motion to quash or modify the subpoena; Rule 17(d) and (e), which govern service of subpoenas; and Rule 17(g), relating to your duty to respond to this subpoena and the potential consequences of not doing so.

*(SEAL)*

Date: _____

CLERK OF COURT

_____
*Signature of Clerk or Deputy Clerk*

The name, address, e-mail, and telephone number of the attorney representing *(name of party)* Defendant Sebastian Guthery , who requests this subpoena, are:

Andrew P. Young, Esq. of Barnes & Thornburg LLP, 665 W. Broadway, Suite 1300, San Diego, California 92101;
Email: andrew.young@btlaw.com; Telephone:  (619) 321-5007

**Notice to those who use this form to request a subpoena**

Before requesting and serving a subpoena pursuant to Fed. R. Crim. P. 17(c), the party seeking the subpoena is advised to consult the rules of practice of the court in which the criminal proceeding is pending to determine whether any local rules or orders establish requirements in connection with the issuance of such a subpoena. If no local rules or orders govern practice under Rule 17(c), counsel should ask the assigned judge whether the court regulates practice under Rule 17(c) to 1) require prior judicial approval for the issuance of the subpoena, either on notice or ex parte; 2) specify where the documents must be returned (e.g., to the court clerk, the chambers of the assigned judge, or counsel's office); and 3) require that counsel who receives produced documents provide them to opposing counsel absent a disclosure obligation under Fed. R. Crim. P. 16.

Please note that Rule 17(c) (attached) provides that a subpoena for the production of certain information about a victim may not be issued unless first approved by separate court order.

AO 89B  (07/16)  Subpoena to Produce Documents, Information, or Objects in a Criminal Case  (Page 2)

Case No.  3:23-CR-00179-TWR

# PROOF OF SERVICE

This subpoena for *(name of individual and title, if any)* _____
was received by me on *(date)* _____ .

☐ I served the subpoena by delivering a copy to the named person as follows: _____

_____ on *(date)* _____ ; or

☐ I returned the subpoena unexecuted because: _____
_____ .

Unless the subpoena was issued on behalf of the United States, or one of its officers or agents, I have also tendered to the witness fees for one day's attendance, and the mileage allowed by law, in the amount of

$ _____ .

My fees are $ _____ for travel and $ _____ for services, for a total of $   0.00   .

I declare under penalty of perjury that this information is true.

Date: _____

_____
*Server's signature*

_____
*Printed name and title*

_____
*Server's address*

Additional information regarding attempted service, etc.:

AO 89B  (07/16)  Subpoena to Produce Documents, Information, or Objects in a Criminal Case (Page 3)

## Federal Rule of Criminal Procedure 17 (c), (d), (e), and (g) (Effective 12/1/08)

**(c) Producing Documents and Objects.**

    **(1) In General.** A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

    **(2) Quashing or Modifying the Subpoena.** On motion made promptly, the court may quash or modify the subpoena if compliance would be unreasonable or oppressive.

    **(3) Subpoena for Personal or Confidential Information About a Victim.** After a complaint, indictment, or information is filed, a subpoena requiring the production of personal or confidential information about a victim may be served on a third party only by court order. Before entering the order and unless there are exceptional circumstances, the court must require giving notice to the victim so that the victim can move to quash or modify the subpoena or otherwise object.

**(d) Service.** A marshal, a deputy marshal, or any nonparty who is at least 18 years old may serve a subpoena. The server must deliver a copy of the subpoena to the witness and must tender to the witness one day's witness-attendance fee and the legal mileage allowance. The server need not tender the attendance fee or mileage allowance when the United States, a federal officer, or a federal agency has requested the subpoena.

**(e) Place of Service.**

    **(1) In the United States.** A subpoena requiring a witness to attend a hearing or trial may be served at any place within the United States.

    **(2) In a Foreign Country.** If the witness is in a foreign country, 28 U.S.C. § 1783 governs the subpoena's service.

**(g) Contempt.** The court (other than a magistrate judge) may hold in contempt a witness who, without adequate excuse, disobeys a subpoena issued by a federal court in that district. A magistrate judge may hold in contempt a witness who, without adequate excuse, disobeys a subpoena issued by that magistrate judge as provided in 28 U.S.C. § 636(e).

# Attachment A

1

## ATTACHMENT A TO SUBPOENA TO PRODUCE DOCUMENTS, INFORMATION, OR OBJECTS IN A CRIMINAL CASE

### *United States of America v. Nine2Five, LLC and Sebastian Guthery*
### United States District Court for the Southern District of California
### Case No. 3:23-CR-00179-TWR

Pursuant to Fed. R. Cr. P. 17 and 21 C.F.R. § 20.2(a), Sebastian Guthery ("Guthery") hereby requests that you produce separately by request and permit Guthery to inspect and copy, at the location and time identified in the accompanying Subpoena, the Documents described below.

### INSTRUCTIONS AND DEFINITIONS

1. These Requests shall be construed to make the Requests inclusive rather than exclusive. For example, the past tense shall be construed to include the present tense, and vice versa; the singular shall include the plural, and vice versa; "and" and "or" should be construed either disjunctively or conjunctively as necessary to bring within the scope of this Request for Production any information which might otherwise be construed as outside its scope.

2. "You" or "Your" or "FDA" refers to the Food and Drug Administration and any of its past or present members, affiliates, subgroups, predecessors and successors in interest, and their past or present members, employees, consultants, representatives, attorneys, investigators, contractors, subcontractors, and experts.

3. "Guthery" refers to Sebastian Guthery and his agents, representatives, employees, insurers, attorneys, or anyone acting on his behalf.

4. "Nine2Five" refers to Nine2Five, LLC and any of its past or present members, affiliates, subgroups, predecessors and successors in interest, and their past or present members, employees, consultants, representatives, attorneys, investigators, contractors, subcontractors, and experts.

5. "Kratom" refers to the dietary supplements and bulk dietary ingredients that are, or contain Kratom, also known as mitragayna speciosa, mitragynine extract, biak-biak, cratom, gratom, ithang, kakuam, katawn, kedemba, ketum, krathom, krton, mambog, madat, Maeng da leaf, nauclea, Nauclea speciosa, or thang.

6. "Import Alert 54-15" refers to the FDA's Import Alert "DETENTION WITHOUT PHYSICAL EXAMINATION OF DIETARY SUPPLEMENTS AND BULK DIETARY INGREDIENTS THAT ARE OR CONTAIN MITRAGYNA SPECIOSA OR KRATOM," issued on February 28, 2014.

7. "Documents" refers to emails, communications, reports, and memorandums.

## DOCUMENT REQUESTS

1. All documents relating to whether kratom was marketed as or in a dietary supplement prior to October 15, 1994.

2. All documents relating to whether kratom is present in the food supply in a form in which it has not been chemically altered.

3. All documents FDA reviewed or relied upon relating to its position that the consumption of kratom will specifically cause any of the following individual health risks noticed in the FDA's import Alert 54-15:

3

- respiratory depression;
- nervousness;
- agitation;
- aggression;
- sleeplessness;
- hallucinations;
- delusions;
- tremors;
- loss of libido;
- constipation;
- skin hyperpigmentation;
- nausea;
- vomiting;
- sever withdrawal signs and symptoms

4. All documents stating, referencing or relating to the amount of Kratom that must be consumed before an individual could experience each of the specific health risks listed below that are identified in FDA's Import Alert 54-15:

- respiratory depression;
- nervousness;
- agitation;
- aggression;
- sleeplessness;

4

- hallucinations;
- delusions;
- tremors;
- loss of libido;
- constipation;
- skin hyperpigmentation;
- nausea;
- vomiting; and,
- sever withdrawal signs and symptoms

5. All documents relied upon by FDA to support the statements on FDA's website, "FDA and kratom" https://www.fda.gov/news-events/public-health-focus/fda-and-kratom, dated 7/21/2023, specifically including the following statements:

- "Kratom is not appropriate for use as a dietary conventional supplement. FDA has concluded from available information, including scientific data, that kratom is a new dietary ingredient for which there is inadequate information to provide reasonable assurance that such ingredient does not present a significant or unreasonable risk of illness or injury and, therefore, dietary supplements that are or contain kratom are adulterated under section 402(f)(1)(B) of the FD&C Act. Further, FDA has determined that kratom, when added to food, is an unsafe food additive within the meaning of section 409; food containing an unsafe food additive, such as kratom, is adulterated under section

5

      402(a)(2)(C)(i). Based on these determinations by FDA, kratom is not lawfully marketed as a dietary supplement and cannot be lawfully added to conventional food."

- "In rare cases, deaths have been associated with kratom use, as confirmed by a medical examiner or toxicology reports. However, in these cases, kratom was usually used in combination with other drugs, and the contribution of kratom in the deaths is unclear."

- "FDA is also aware of cases involving neonatal abstinence syndrome, in which newborns experienced withdrawal signs such as jitteriness, irritability, and muscle stiffness following prolonged exposure to kratom prior to birth."

6. All documents referencing or related to information that kratom does not present a serious risk of illness or injury.

7. All studies, research reports or data, whether published or not, and all documents related to such studies, research reports or data, analyzing or reviewing kratom, including any studies, research reports or data in which FDA has participated in or funded, in whole or in part.

8. All documentation or correspondence between and among FDA, the United States Department of Health and Human Services ("HHS"), National Institute of Health ("NIH") (including the National Institute of Drug Abuse) and Drug Enforcement administration ("DEA") discussing, referencing or relating to kratom's safety profile.

9. All documents referencing or relating to any analysis conducted or reviewed by FDA on any food products that impact the same receptors as opioids in the brain.

10. All documents referencing or relating to kratom's use as a food product in Southeast Asia.

11. The scientific information, history of use, or other evidence relied on by the FDA to determine that no form of kratom was marketed as or in a dietary supplement prior to October 15, 1994.

12. The scientific information, history of use, or other evidence relied on by the FDA to determine that there is no form of kratom that is present in the food supply in which the kratom has not been chemically altered.

13. The basis by which FDA has determined that all possible forms of kratom-derived dietary ingredients consumed, according to all possible conditions of use, are deemed adulterated under section 402(f) of the Act.